UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **NORFOLK SOUTHERN RAILWAY COMPANY,**<br><br>Plaintiff,<br><br>v.<br><br>**NEW YORK TERMINALS, LLC, and NY TERMINALS II, LLC,**<br><br>Defendant. | Civ. No. 2:14-07664<br><br>**OPINION** |
| **NEW YORK TERMINALS, LLC, and NY TERMINALS II, LLC,**<br><br>Third-Party Plaintiff,<br><br>v.<br><br>**NJ ASPHALT TERMINALS, LLC, d/b/a CL ASPHALT,**<br><br>Third-Party Defendant. | |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiff Norfolk Southern Railway Company ("Norfolk") brings this action against New York Terminals, LLC, and NY Terminals II, LLC (collectively "NYT"), alleging failure to pay demurrage charges as set forth in Norfolk's tariff pursuant to 49 U.S.C. § 10746. NYT, in turn, brings a third-party action against NJ Asphalt Terminals, LLC d/b/a CL Asphalt ("NJAT"), alleging that NJAT is responsible for payment of the demurrage charges pursuant to their transloading and services agreement. This matter comes before the Court on Norfolk's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, Norfolk's motion for summary judgement is **GRANTED**.

1

## I. BACKGROUND

Norfolk is an interstate rail carrier incorporated under Virginia law, with its principal place of business in Norfolk, Virginia. Compl. ¶ 1 ("Norfolk Compl."), ECF No. 1. NYT is a New Jersey corporation that provides liquid bulk storage and other services to its customers. *See* Defs.' Answer & Third-Party Compl. 4, ¶ 2 ("NYT Compl."), ECF No. 9. NJAT is a corporation with a place of business in Wharton, New Jersey, which receives transloading services from NYT at its facility in Elizabeth, New Jersey. Answer to Third-Party Compl. ¶¶ 2–3 ("NJAT Answer"), ECF No. 19. The instant case concerns shipments of liquid asphalt product, which Norfolk transported by rail to NYT's facility between November 2013 and May 2014.

### A. Procedural History

On December 9, 2014, Norfolk filed a complaint against NYT, alleging that NYT accrued $294,360.00 worth of demurrage charges by failing to return Norfolk's railcars within the allotted "free time" in accordance with Norfolk's governing tariff. Norfolk Compl. at ¶ 10. NYT answered by denying liability, asserting several affirmative defenses and filing a third-party complaint claiming that NJAT is liable for the charges "under the obligations of being a tenant" at NYT's Elizabeth facility. *See* NYT Compl. at 3–4. NJAT answered by asserting several defenses against NYT, including breach of the transloading and services agreement (the "NJAT Agreement"), gross negligence and indemnification. *See* NJAT Answer at 2–3.

On April 9, 2015, Norfolk filed a separate complaint against NJAT's "sister" company, C.L. Consulting and Management Corporation ("CLCM"), for unpaid demurrage charges between October 2013 and May 2014, totaling $284,960.00. *See* Decl. of B. Rose in Supp. of Mot. to Consolidate ¶ 11, ECF No. 52-1. In turn, CLCM filed a third-party complaint against NYT, claiming that the charges arose from NYT's misconduct and that it breached the terms of the NJAT Agreement. *Id*. at ¶ 12. On December 19, 2016, this Court denied NJAT's motion to consolidate these cases for multiple reasons, which it will not reiterate here. *See* Op., ECF No. 58.

### B. Norfolk's Motion for Summary Judgment

Norfolk now moves for summary judgment against NYT, arguing that NYT is responsible for the demurrage charges because the bills of lading list NYT as the consignee for the shipments received during the relevant period. *See* Norfolk's Mem. of Law in Supp. of Its Mot. for Summ. J. 6–7 ("Norfolk's Mot."), ECF No. 71-1. It also argues that the railcars at issue transported hazardous material, which resulted in additional charges. *Id*. at 7–9. Finally, Norfolk argues that NYT's *force majeure* defense fails because it waived the defense by failing to comply with the *force majeure* clause in Norfolk's tariff and because the inclement weather was not the sole cause of the demurrage. *Id*. at 9–15.

NYT opposes summary judgment, filing a "Preliminary Statement," which inexplicably and inexcusably cites no statutory, common or case law of any kind. *See* Statement of Material Facts in Opp'n ("NYT's Opp'n"), ECF No. 72. NYT does not

2

contest that it received railcars from Norfolk during the relevant period. Instead, it argues that it is not liable for the demurrage charges on the following grounds: (1) NYT is not the true consignee of the product it received, *see id*. at 3–4; (2) between December 2013 and March 2014, winter weather caused delays in the unloading of the railcars, which resulted in a large portion of the demurrage charges at issue, *see id*. at 5; (3) the product in question required NYT to reheat it before unloading, causing further delays, *see id*. at 5–6; (4) the product was not hazardous in fact and, therefore, did not warrant the additional $100.00 per day hazardous material charge, *see id*. at 6; and (5) NJAT is responsible for the demurrage charges under the terms of the NJAT Agreement, *see id*. at 6–7.

While NYT filed objections to Norfolk's statement of material facts, there are several critical facts that NYT does not contest. First, NYT does not dispute that it receives electronic notification from Norfolk when railcars have been "constructively placed" in its service yard—*i.e.*, when railcars are ready for unloading. *Compare* Norfolk's Statement of Facts in Supp. of Its Mot. for Summ. J. ("Norfolk's Statement") ¶¶ 5–6, ECF No. 71-2, *with* NYT's Objections to the Statement of Facts ("NYT's Objs.") ¶¶ 5–6, ECF No. 72-1. Second, NYT does not dispute that it contractually agreed to be listed as a consignee on the bills of lading of the shipments at issue, despite being unaware of potential legal issues. *Compare* Norfolk's Statement at ¶ 10, *with* NYT's Objs. at ¶ 10. Third, NYT does not contest the authenticity of the exhibits produced by Norfolk which show bills of lading for the shipments at issue that name NYT as the consignee. *Compare* Norfolk's Statement at ¶ 11, *with* NYT's Objs. at ¶ 11. Fourth, NYT does not contest that the shipper of the railcars at issue certified the product therein as hazardous. NYT only contests whether the product *should have been considered* hazardous after the product cooled during transport to NYT. *Compare* Norfolk's Statement at ¶ 18, *with* NYT's Objs. at ¶ 18.

Fifth, with respect to its *force majeure* defense, NYT concedes that winter weather had no bearing on the accrued demurrage charges prior to December 2013 and after February 2014. *See* NYT's Objs. at ¶ 22. NYT admits that winter weather did not completely shut down its operations during the time it claims *force majeure*. *See id*. at ¶ 23. NYT further admits that bad weather was only one of the causes that created operational difficulties during the relevant period and that it continued operating on behalf of other customers during that time. *See id*. at ¶¶ 30–31. Finally, without providing any supporting evidence to the Court, NYT claims that it advised Norfolk of its operational difficulties in January 2014; however, NYT does not assert that it followed the protocol set forth in Norfolk's tariff for requesting relief from demurrage charges on account of weather related events. *Compare* Norfolk's Statement at ¶¶ 24–28, *with* NYT's Objs. at ¶¶ 24–28.

Neither NYT nor NJAT moved for summary judgment concerning the third-party complaint. Consequently, the Court will only address the matter before it—*i.e.*, NYT's liability to Norfolk for the demurrage charges.

3

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); s*ee Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court considers all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

## III. DISCUSSION

The Court will first address NYT's liability for the demurrage charges by virtue of it being a consignee on the bills of lading. The Court will then turn to NYT's *force majeure* defense and its claim that the liquid asphalt product was not hazardous. Ultimately, the Court finds that NYT is liable for demurrage as a consignee because there is no genuine dispute as to any material fact.

### A. NYT Is Liable for the Demurrage Charges as a Matter of Law

NYT argues that it is not liable for the demurrage charges because it "is simply the destination and not the consignee." *See* NYT's Opp'n at 4. Instead, NYT asserts that NJAT is the "true consignee" because it is "the owner of the material being shipped into the terminal and had the control of the deliveries."[1] *See id*. NYT further claims that it "certainly did not want the responsibility of the ownership of the material" and that "[a]ll bills should have been sent to [NJAT]." *See id*. Again, NYT cites to no law in support of its position, presumably because the law directly contradicts it.

The Third Circuit is unequivocal on the liability of a consignee-agent, such as NYT, for demurrage charges levied by a rail carrier, such as Norfolk. "[A]n entity named on a bill of lading as the sole consignee, without any designations clearly indicating any other role, is *presumptively liable* for demurrage fees on the shipment to which that bill of lading refers, but may avoid liability, if it is an agent, by following the notification provisions of 49 U.S.C. § 10743(a)(1)." *CSX Transp. Co. v. Novolog Bucks Cnty.*, 502 F.3d 247, 262 (3d Cir. 2007) (emphasis added). The governing statute provides that the consignee must give "written notice to the delivering carrier before delivery of the property" of the consignee's "agency and absence of beneficial title" and "of the name and address of the beneficial owner . . . ." *See* 49 U.S.C. § 10743(a)(1). A consignee may rebut the presumption of liability "by showing that: (1) it never accepted delivery of the shipments, or (2) it was acting as an agent for [the beneficial owner] and informed [the carrier] of this

---

[1] In its papers, NYT refers to NJAT as "CL" or "CL Consulting" in an apparent reference to NJAT's "sister" company, who Norfolk is also suing in an aforementioned parallel proceeding. NJAT is the entity before the Court in the instant case and the Court assumes that NYT refers to it when it references "CL" or "CL Consulting."

4

arrangement in writing." *See CSX Transp., Inc. v. Port Erie Plastics, Inc.*, 295 F. App'x 496, 498 (3d Cir. 2008).

It is undisputed that NYT received the shipments in question and that the bills of lading list NYT as the consignee for those shipments. *See* Norfolk's Mot., Ex. E, ECF No. 71-7; Ex. F, ECF No. 71-8; NYT's Opp'n at 4.[2] Furthermore, NYT specifically contracted with NJAT to be listed as the consignee on the bills of lading to avoid delays in the delivery of NJAT's shipments to NYT's railyard. *See* Norfolk's Mot., Ex. D, ECF No. 71-6.[3] NYT's position that it is not the "true consignee" is irrelevant under the law. NYT is the sole entity listed as the consignee on the bills of lading. NYT is, therefore, presumptively liable for the demurrage charges. NYT could have rebutted this presumption by giving written notice to Norfolk that it was acting on behalf of NJAT, but NYT has not provided any evidence to the Court that it did so. Consequently, the presumption of liability stands and NYT is, therefore, liable for the demurrage charges. *See Novolog*, 502 F.3d at 262; *Port Erie Plastics*, 295 F. App'x at 498.

### B. NYT's *Force Majeure* Defense Fails Because It Failed to Comply with the Terms of Norfolk's Tariff

NYT claims that "[i]t is well know [*sic*] that the weather affecting New Jersey during the period of time of December, 2013 through March, 2014, was colder then [*sic*] previous years and the terminal and the [Norfolk] railyards experienced more snow and cold days than before." *See* NYT's Opp'n at 5. Additionally, "the railroads issued weather advisories covering at least 17 days during the winter months." *Id.* The inclement weather caused safety issues for NYT's employees, which resulted in service delays and interruptions. *See id.* NYT does not specify which 17 days the advisories referenced, nor has it produced the advisories themselves in support of its position. NYT's general manager, Craig Royston, clarified at his deposition that NYT asserts its *force majeure* defense for the months of December 2013 through February 2014. *See* Norfolk Mot., Ex. G, Royston Dep. 70:2–12, ECF No. 71-9 [hereinafter "Royston Dep."].

"*Force majeure* is, 'An event or effect that can be neither anticipated nor controlled.'" *Corestar Int'l Pte. Ltd. v. LPB Commc'ns, Inc.*, 513 F. Supp. 2d 107, 120 n.8 (D.N.J. 2007) (quoting *Black's Law Dictionary* (8th ed. 2004)). The term includes acts of nature, such as extreme winter weather. *See id.* "A *force majeure* clause is, 'A contractual

---

[2] In its objections to Norfolk's statement of material facts, NYT claims that a Norfolk employee advised it that "since [it was] the destination that [its] name and address must be listed as the consignee." NYT references the employee's testimony in support of its claim that Norfolk's "misinformation" caused it to be listed as consignee. *See* NYT's Objs. at ¶ 11. NYT failed to provide the Court with the employee's testimony. At summary judgment, a party asserting a fact must support it with evidence from the record. *See* Fed. R. Civ. P. 56(c)(1)(a); *see also* D.N.J. Local Civ. R. 56.1(a) ("The opponent of summary judgment shall furnish . . . a responsive statement of material facts . . . stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion; any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion."). In the absence of such evidence, the Court will not entertain NYT's baseless assertion.

[3] Exhibit D is the transloading and services agreement between NYT and CLCM. It states, in relevant part: "To avoid delays Ship To Destination Railyard: Bayway, New Jersey Consignee: New York Terminals." Ex. D at Bates No. NYT0148.

provision allocating the risk if performance becomes impossible or impracticable, esp. as a result of an event or effect that the parties could not have anticipated or controlled." *Id.* (quoting same).

Norfolk's governing tariff contains a *force majeure* clause, which specifically addresses demurrage charges caused by weather interference. The tariff states, "When because of earthquakes, tornadoes, hurricanes, floods or *heavy snow*, the operations of the Consignor or Consignee are disrupted, the demurrage/storage calculations will be adjusted to account for the disruption, provided the disruption exceeds (2) days in duration." *See* Norfolk's Mot., Ex. A, Freight Tariff NS 6004-C, Bates No. NS 0357, ECF No. 71-3 [hereinafter "Ex. A"] (emphasis added). The tariff requires that a party request relief from demurrage through Norfolk's online notification apparatus "within 5 calendar days from the date the cars are released." *See id.*

When confronted with a question concerning the impracticability or impossibility of performance, New Jersey state and federal courts turn to the *Restatement of Contracts* for guidance. *See, e.g.*, *Dworman v. Mayor & Bd. of Aldermen, Governing Body of Twp. of Morristown*, 370 F. Supp. 1056, 1070 (D.N.J. 1974); *Directions, Inc. v. New Prince Concrete Constr. Co., Inc.*, 491 A.2d 1347, 1349 (N.J. Super. Ct. App. Div. 1985). The *Restatement* provides:

> Where, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged, *unless the language or the circumstances indicate the contrary*.

*Restatement (Second) of Contracts* § 261 (1981) (emphasis added). Furthermore, where an agreement between parties contains a *force majeure* clause, that clause "must be construed, like any other contractual provision, in light of 'the contractual terms, the surrounding circumstances, and the purpose of the contract.'" *See Facto v. Pantagis*, 915 A.2d 59, 62 (N.J. Super. Ct. App. Div. 2007) (quoting *Marchak v. Claridge Commons, Inc.*, 633 A.2d 531 (N.J. 1993)). "When an unforeseen event affecting performance of a contract occurs, such a clause will be given a reasonable construction in light of the circumstances." *Id.* (quoting 8 *Corbin on Contracts* § 31.4 (Perillo rev. 1999)).

To be clear, the Court recognizes that a tariff is not a contract; however, a tariff "must be treated as though it has the force of law" and "must be strictly observed." *See Cincinnati, New Orleans & Tex. Pac. Ry. Co. v. Chesapeake & Ohio Ry. Co.*, 441 F.2d 483, 488 (4th Cir. 1971) (citations omitted); *see also MCI Telecomms. Corp. v. Garden State Inv. Corp.*, 981 F.2d 385, 387 (8th Cir. 1992) ("federal tariffs are the law, not mere contracts"). Disputes over payments imposed by a tariff are often analogous to breach-of-contract disputes, as is the case here. *See MCI Telecomms.*, 981 F.2d at 387 (stating that payment disputes "often arise in the context of a broken contract"). Furthermore, "it is settled law that one who accepts goods consigned to him is liable for all freight charges

properly due under the applicable tariffs." *S. Pac. Co. v. Miller Abattoir Co.*, 454 F.2d 357, 359 (3d Cir. 1972). Thus, when it accepted NJAT's shipments, NYT agreed to be bound by the terms of Norfolk's tariff.

The terms of the tariff are clear. In order to obtain relief from the demurrage charges due to winter weather, the tariff required NYT to provide written notice to Norfolk within five calendar days from the release of the relevant cars. NYT claims, again without providing any evidence from the record to the Court, that "[Norfolk] was made aware of the various issues under the terms of the tariff that was being considered." *See* NYT's Objs. at ¶ 24. Notably, however, NYT does not claim to have followed the protocol prescribed by the express terms of the tariff. Indeed, NYT failed to follow those terms. *See* Norfolk's Statement at ¶ 28; Ex. I, Parr Dep., 37:18–22, ECF No. 71-11. Accordingly, in strict observance of the tariff as required by law, NYT's *force majeure* defense must fail.

With respect to frozen or congealed material, the tariff provides that a consignee must provide written notice of its request for relief within ten days after the release of the car. *See* Ex. A at Bates No. NS 0357. Similar to its *force majeure* defense, NYT claims that it notified Norfolk of the need to heat the cars prior to unloading, but it does not claim to have followed the express terms of the tariff. In fact, NYT admits that it failed to follow those terms. *See* Royston Dep., 60:15–22. Consequently, NYT is not entitled to relief from the demurrage charges because it failed to adhere to the terms of the tariff as required by law. *Miller Abattoir*, 454 F.2d at 359.

### C. The Liquid Asphalt Product Was Hazardous as a Matter of Law

Finally, NYT claims that Norfolk erroneously imposed an additional $100.00 per day hazardous material charge because the asphalt product was not hazardous once it cooled to below 212 degrees Fahrenheit. *See* NYT's Opp'n at 6. In support of its claim, NYT offers a comment that it submitted to the Surface Transportation Board ("STB") in support of CLCM's petition for a declaratory order finding that the asphalt product was, in fact, not hazardous when cooled below 212 degrees. *See* Verified Statement of C. Royston, ECF No. 72-3. NYT represents that after several months of deliberation, "the STB decided that the matter should be heard in this matter." *See* NYT's Opp'n at 6.

Norfolk argues, "As a matter of law, a rail carrier is entitled to rely upon the shipper's hazardous material designation." Norfolk's Mot. at 8. The applicable regulation concerning the transportation of hazardous material provides, in pertinent part:

> Each carrier who transports a hazardous material in commerce *may rely on information provided by the offeror* of the hazardous material or a prior carrier, unless the carrier knows or, a reasonable person, acting in the circumstances and exercising reasonable care, would have knowledge that the information provided by the offeror or prior carrier is incorrect.

49 C.F.R. § 171.2(f) (emphasis added). "The Department of Transportation has long interpreted this regulation to entitle a carrier to rely on a shipper's certification that the material offered is in accordance with the Hazardous Material Regulations unless it has

7

'reason to know of discrepancies.'" *Borger v. CSX Transp., Inc.*, 571 F.3d 559, 565 (6th Cir. 2009) (quoting Hazardous Materials, 63 Fed. Reg. 30,411 (Dep't of Transp. June 4, 1998) (formal interpretation)).

In the instant case, the shipper clearly identified the shipments as hazardous material on the bills of lading. *See* Norfolk's Mot., Exs. E, F. The bills of lading list identification numbers UN3256, NA1993 and UN3082, all of which are listed on the Department of Transportation's ("DOT") hazardous materials table. *See* 49 C.F.R. § 172.101. Item 1015 of Norfolk's tariff clearly states that Norfolk levies an additional $100.00 charge for materials listed on the DOT's table. *See* Ex. A at Bates Nos. NS 0341, 0362.

Once again, NYT provides no evidence in support of its claim that the materials in question were not hazardous upon cooling.[4] As previously shown, the law requires strict observance of Norfolk's tariff, which clearly establishes the hazardous material charge for the shipped materials in this case. Furthermore, Norfolk was entitled to rely on the shipper's certification as a matter of law. Accordingly, the Court finds that NYT is liable for the all of the demurrage and hazardous material charges. The Court does not address NYT's claims against third-party defendant NJAT because it did not move for summary judgment against NJAT.

### IV. CONCLUSION

For the reasons stated above, Norfolk's motion for summary judgment is **GRANTED**. An appropriate order follows.

*/s/ William J. Martini*
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: September 12th, 2017**

---

[4] NYT's comment to the STB is a piece of legal advocacy and clearly does not qualify as objective evidence upon which the Court can rely in establishing the existence of a material fact in the instant case.